[S. F. No. 110. In Bank.—September 27, 1897.]

## J. J. RAUER, Appellant, v. E. W. WILLIAMS, Clerk, etc., Respondent.

<table>
<tr><td>118</td><td>401</td></tr>
<tr><td>120</td><td>391</td></tr>
<tr><td>120</td><td>394</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>126</td><td>232</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>125</td><td>192</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>133</td><td>77</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>135</td><td>652</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>e143</td><td>568</td></tr>
<tr><td>e143</td><td>570</td></tr>
<tr><td>143</td><td>571</td></tr>
<tr><td>118</td><td>401</td></tr>
<tr><td>148</td><td>267</td></tr>
<tr><td>148</td><td>749</td></tr>
</table>

CONSTITUTIONAL LAW—INVALID STATUTE—MODE OF PAYING FEES—ARBITRARY CLASSIFICATION—SPECIAL LEGISLATION—ACCOUNTABILITY OF OFFICERS FOR FEES.—The act of 1893, p. 127, providing and regulating the manner of receiving and paying fees, etc., in cities and cities and counties having a population of over one hundred thousand inhabitants, and prescribing the duties of officers with reference thereto, and requiring a certificate to be issued by an officer of whom service is demanded, to be delivered to the treasurer with the required fees, and that a receipt for the money from the treasurer be returned to such officer before the required service can be performed, is not intended for the convenience of the public, but for the protection and security of the municipality. Such act is unconstitutional and invalid for being based upon an arbitrary distinction, there being no reason why attempted protection should be accorded to a city of one hundred thousand inhabitants, and not to one of less population, and for being special legislation in a case where a general law can be made applicable, and also for violating the constitutional requirement that the legislature, by general and uniform laws, shall provide for the strict accountability of officers for all fees which may be collected by them.

ID.—CLASSIFICATION OF MUNICIPAL CORPORATIONS—RELATION TO SPECIAL LEGISLATION.—The object of classifying municipal corporations according to population, and forbidding their creation by special laws, was to avoid the necessity of special legislation; and the legislature cannot pass laws touching the organization and incorporation of municipalities, except by conforming to the requirements of the classification act; but, upon other matters, it may pass general and uniform laws applicable either to municipal corporations of a given class, or to all of a separate class created by and designated in the act itself, provided some plain reason appears for the limitation to a class where

the law does not apply to all municipalities within the same general category: yet a law is not necessarily a general law merely because it operates upon all municipalities within a specified class, and it is special if it applies merely to all within a class, without reason appearing why it is not made to apply generally to all municipal corporations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

George H. Perry, and Henry E. Monroe, for Appellant.

The act of 1893 is unconstitutional as being special legislation. (*Welsh v. Bramlet*, 98 Cal. 219, 227.) An arbitrary classification cannot be used as a pretext for special legislation. (*Dougherty v. Austin*, 94 Cal. 601, 620; *Darcy v. Mayor etc. of San Jose*, 104 Cal. 642, 645; *Pasadena v. Stimson*, 91 Cal. 238; *Earl v. Board of Education*, 55 Cal. 489; *San Luis Obispo v. Graves*, 84 Cal. 71.)

Harry T. Creswell, and W. I. Brobeck, for Respondent.

The act of 1893 is a general law, because its provisions apply uniformly to all municipalities of a class which have occasioned the legislation to which the act has reference. (*Randolph v. Word*, 49 N. J. L. 85; *People v. Central Pac. R. R. Co.*, 105 Cal. 576–84; *People v. Henshaw*, 76 Cal. 445, 446; *Cody v. Murphey*, 89 Cal. 524; *Welsh v. Bramlet*, 98 Cal. 226; *Pritchett v. Stanislaus County*, 73 Cal. 312; *State v. Wofford*, 121 Mo. 61; *McClay v. Lincoln*, 32 Neb. 412; *Hunzinger v. State*, 39 Neb. 653.)

HENSHAW, J.—This action is to compel the defendant, Williams, as clerk of the justice's court of the city and county of San Francisco, to accept fees tendered to him by plaintiff, who was about to commence an action in said justice's court. Defendant refused to accept the fees, and plaintiff proceeded with his action in mandate to compel him to do so. To the complaint in mandate the defendant made answer, basing and justifying his refusal upon an act of the legislature passed in 1893. The validity or invalidity of this act is the sole question presented on this appeal.

In 1893 the legislature passed an act entitled, "An act to provide and regulate the manner of receiving and paying fees, com-

missions, percentages, and other compensation for official services in cities and cities and counties having a population of over one hundred thousand inhabitants, and prescribing the duties of officers with reference thereto." (Stats. 1893, p. 127.)

The refusal of the justice's court clerk to accept the fee was based upon the terms of this act, which provides a new scheme for the collection of fees and commissions. By its provisions the various officers no longer collect and receive the fees, but they are required to give to the person demanding of them a service a receipt or acknowledgment, stating the nature of the service to be rendered, and the amount which by law is due therefor. This receipt or certificate is then to be taken by the demandant to the treasurer, and to him delivered with the money called for therein. The treasurer in turn issues his receipt, which must in like manner be taken to the officer, who issues a second certificate to the demandant, and thereupon and thereafter the services are to be performed.

It is to be noted that the act in question conforms to the provisions of the "Act classifying municipal corporations" (Stats. 1883, p. 24), and is made to apply to municipal corporations of the first class created therein. But against this the contention is, that this classification was created only for the purpose of the municipal corporation bill (Stats. 1883, p. 93), and is, therefore, applicable only to those cities which have adopted charters in conformity with the provisions of that act. It is further insisted that even if this be regarded as untenable, nevertheless the legislature, under article XI, section 6, of the constitution, can classify municipal corporations, and pass only such laws regarding them as affect their incorporation and organization, and that this is not such law.

It was the unquestioned design of the framers of the constitution to prevent on the part of the legislature a practice, theretofore permissible, of singling out a particular town or city and passing legislation directly affecting it and no other. It was believed that the exercise of this power by the legislature led to abuses, and that a constitutional provision relieving cities from this particular form of legislative control and preserving to them their autonomy unimpaired except by general legislative action, would better subserve the purposes of good government.

Therefore, in the case of those municipal corporations known as counties, the constitution permitted a classification by population only for the purpose of fixing the compensation of officers, and strictly insisted that the system of county governments should be uniform throughout the state (Const., art XI, sec. 4), and that the duties of the officers recognized by this system should likewise be prescribed by general and uniform law. (Const., art. XI, sec. 5.) It further declared that by general and uniform laws the legislature should provide "for the strict accountability of county and township officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them or officially come into their possession."

When it came to treat of the other class of municipal corporations, cities or cities and counties, and towns, it provided as follows: "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws." (Const., art. XI, sec. 6.) (Though this section has since been amended, such was its wording at the time these questions arose.)

Still further to emphasize its policy it set forth in article IV, section 25, thirty-two subjects upon which local legislation or special laws were inhibited, and in subdivision 33, as an "*omnium gatherum*," forbade the legislature from passing such laws "in all other cases where a general law can be made applicable."

These provisions plainly indicate, however, that the constitution does not mean to deprive the legislature of the power to pass laws affecting municipal corporations, but only to insist that such laws as may be passed shall be of general application, to avoid the evil spoken of. It is, therefore, entirely too narrow a view to say that the power to classify cities conferred upon the

legislature in article XI, section 6, means the power to classify them only for the purpose of regulating their incorporation and organization, for at the time the constitution went into effect nearly all of the present cities and towns of the state, and absolutely all which are of much importance by reason of their wealth and population, were already incorporated and organized. The power to classify, which is thus conferred, would be meaningless unless the classifications made were to be employed by the legislature for the purpose of supplying the general laws required by the varying needs of the municipalities so classified. If the view which appellant takes is to prevail, then, as San Francisco at the time of the adoption of the constitution was incorporated and organized, if the needs of San Francisco, and cities or cities and counties of its class, should demand the creation of five new police courts, a legislative enactment to that effect could not become a law unless it likewise imposed upon every city in the state the same number of courts.

The other view, which is the interpretation long given to this provision of the constitution by this court, empowers the legislature, under restrictions hereafter to be considered, to pass laws regulating and affecting the incorporation and organization of municipalities under the classification act of 1883, and, if the laws so passed be otherwise unobjectionable, they will not be held invalid as special laws because they apply to the needs of only one or another or several of those classes.

"The manifest object of classifying municipal corporations according to population, and in preventing their creation by special laws, as provided by section 6, of article XI, of our constitution, was to avoid the necessity of special legislation. That cities containing a large population require different legislation from those composed of a few hundred inhabitants is evident. To so classify them that general laws applicable to these separate classes will meet the necessities of the case was a wise provision, and a law which applies to one or more, but not to all, of these classes is not for that reason special legislation." (*People v. Henshaw*, 76 Cal. 436; *Cody v. Murphey*, 89 Cal. 522.)

The essential distinction thus to be observed between the power of the legislature when dealing with counties and that when dealing with cities, cities and counties, or towns, is that

in the former case the legislature has not general authority to classify counties by population for purposes of legislation, and is authorized to make such classification only for the purpose of regulating the compensation of county officers, while in the latter case the constitution, recognizing the greater intricacy in the system of government of cities, and their divergent and varying needs, has permitted them to be classified by population for purposes of legislation touching their incorporation and organization.

The latest utterances of this court upon the question are found in *Darcy v. Mayor etc. of San Jose,* 104 Cal. 642. Therein the act of March 3, 1883, classifying the cities, is considered, and it is said: "Section 6, article XI, was evidently intended to limit and not to enlarge the power of the legislature, and I think it was intended that the classification there authorized was to be by a general law in the same sense and in the same way in which it was necessary to provide for the incorporation and organization of cities and towns. Legislation in regard to such incorporations would thereafter be made by reference to the classes thus made."

In *Pasadena v. Stimson,* 91 Cal. 238, it is said: "It is true the legislature is empowered by section 6, of article XI, of the constitution, to classify cities and towns in proportion to population for the purpose of incorporation and organization, and it is undoubtedly true that a law limited to these purposes is not unconstitutional because it makes different regulations for the different classes."

But, while it is thus seen that all municipalities within the state are subject to the operation and control of general laws under the classification act of 1883, provided those laws affect their incorporation and organization, and while it is further seen that a law touching upon matters of incorporation and organization will not be held to be a special law because it operates only upon one or several of the classes, it does not follow that there may not be legislation not affecting incorporation or organization which will be general without reference to the classification act of 1883. To hold otherwise would deprive of all efficacy and utility the last clause of section 6, article XI, of the constitution, which declares that "cities and towns heretofore or

hereafter organized shall be subject to and controlled by general laws."

To illustrate: The legislature might desire to allow all seaboard cities to provide outlets for their sewers in the ocean. Such outlets, unless permitted or sanctioned by the legislature, might be held purprestures. It would be meaningless for the legislature to declare that all cities of the first class, or of the second class, or of the third class, might provide such outlets, for of the municipalities in the enumerated classes many might be inland cities. A law providing that all seaboard towns and cities may provide such outlets for their sewers would neither conform to the classification act of 1883, nor would it apply to all municipalities within the state; but it would still apply to all within the class thus created by the act itself, that is to say, to all similarly situated, and would be a general law contemplated and permitted by the portion of section 6, article XI, of the constitution, just quoted.

Or again: Instancing a narrower case, a law of the legislature affecting all cities within the state which are ports or subports of entry, and providing a state quarantine system therefor, would not conform to the classification act, and such a law would not apply, because it would be needless to make it apply, to all seaboard cities, but it would apply to all cities within the designated class, and such an act likewise would unhesitatingly be upheld as within the scope of section 6 of article XI.

It may be concluded, therefore, that while the legislature cannot pass laws touching the organization and incorporation of municipalities, except by conforming to the requirements of the classification act, upon matters not affecting the incorporation or organization (as in the instances above given), it may pass laws which will be general if they operate uniformly and generally upon all cities of the class created by and designated in the act itself.

The act under consideration, therefore, is not to be condemned merely because it applies to cities and cities and counties of the first class, for, as has been said, it may apply to but one class and still be a general law. But when a law is so made to apply to a class, and not to all within the same general category, plain reason must appear for the limitation. It by no means follows

that a law is a general law because it operates upon all within a class. It is still special if it applies to all within a class, without reason appearing why it is not made to apply generally to all. (*Pasadena v. Stimson, supra; Darcy v. Mayor etc. of San Jose, supra; Ex parte Jentzsch,* 112 Cal. 468.)

All laws of a general nature shall have a uniform operation (Const., art. I, sec. 2), and the legislature is required by general and uniform laws to provide for the strict accountability of county officers for all fees which may be collected by them. (Const., art. XI, sec. 5.) This provision is not inconsistent with the provisions of the constitution applying to cities alone, and is, therefore, applicable to cities and counties. (Const., art. XI, sec. 7; *Kahn v. Sutro,* 114 Cal. 316.)

The manifest purpose of the act in question is to provide a scheme for the collection of fees, which the legislature believed would be better and safer than the one in operation. Clearly the law is not designed for the convenience of the public, but for the protection and security of the municipality. But this being so, there is no inherent reason, and no reason at all, why this attempted protection should be accorded to a city of over a hundred thousand inhabitants, and not to one of less population. It will not be said that there is danger of peculation and misappropriation of funds in the one case, and no danger in the other. There is, therefore, nothing in the law itself, no inherent reason shown, why it should be made applicable to one class and not to all. In addition it violates the express constitutional mandate requiring, by general laws, a strict accountability of officers for all fees; and finally, it is a special law, passed in a case where a general law is applicable. There is, then, no natural, or intrinsic, or constitutional distinction warranting the act in question, while there are express constitutional inhibitions against it.

The conclusion reached renders unnecessary the consideration of other objections presented by appellant, but for the reasons given the judgment is reversed and the cause remanded, with directions to the trial court to enter judgment upon the pleadings in favor of plaintiff.

McFarland, J., Temple, J., Harrison, J., Van Fleet, J., and Garoutte, J., concurred.